**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| ALICE BREWER | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| | ) |
| IMG COLLEGE, LLC | ) |
| Serve Registered Agent: | ) |
| Corporation Service Company | ) REQUEST FOR JURY TRIAL |
| 2900 SW Wanamaker Drive, Suite 204 | ) |
| Topeka, KS 66614 | ) |
| | ) |
| and | ) |
| | ) |
| IMG COLLEGE SEATING, LLC | ) |
| Serve Registered Agent: | ) |
| Corporation Service Company | ) |
| 2900 SW Wanamaker Drive, Suite 204 | ) |
| Topeka, KS 66614 | ) |
| | ) |
| and | ) |
| | ) |
| IMG COLLEGE LICENSING, LLC | ) |
| Serve Registered Agent: | ) |
| Corporation Service Company | ) |
| 2900 SW Wanamaker Drive, Suite 204 | ) |
| Topeka, KS 66614 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Alice Brewer ("Plaintiff"), by and through her undersigned

counsel, and for her Complaint against Defendant IMG College, LLC, Defendant IMG College

Seating, LLC, and Defendant IMG College Licensing, LLC, alleges and states as follows:

**1.**      This is an employment discrimination and retaliation lawsuit based upon and

arising under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*.

1

("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* ("Title VII").

## Parties and Jurisdiction

2.      Plaintiff is, and at all times pertinent to this Complaint was, a citizen of the United States, residing in the state of Kansas.

3.      Defendant IMG College, LLC is, and at all times pertinent to this Complaint was, a legal entity in good standing existing within the laws of the state of Kansas with its registered agent located at: 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, and was an "employer" within the meaning of the ADA and Title VII.

4.      Defendant IMG College Seating, LLC is, and at all times pertinent to this Complaint was, a legal entity in good standing existing within the laws of the state of Kansas with its registered agent located at: 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, and was an "employer" within the meaning of the ADA and Title VII.

5.      Defendant IMG College Licensing, LLC is, and at all times pertinent to this Complaint was, a legal entity in good standing existing within the laws of the state of Kansas with its registered agent located at: 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614, and was an "employer" within the meaning of the ADA and Title VII.

6.      During all relevant times, defendant IMG College Seating, LLC was part of an integrated enterprise with defendants IMG College Seating, LLC and IMG College Licensing, LLC, and, as such, was Plaintiff's employer along with IMG College Seating, LLC and IMG College Licensing, LLC.

7.      During all relevant times, defendants IMG College Seating, LLC, IMG College Seating, LLC and IMG College Licensing, LLC shared interrelated operations, centralized

control of labor relations, common management and common ownership and/or financial control.

8.      Upon information and belief, defendants IMG College Seating, LLC, IMG College Seating, LLC and IMG College Licensing, LLC (referred to collectively throughout below as "Defendants"), as part of an integrated enterprise, together employ, and during all relevant times have employed, 15 or more persons.

9.      Jurisdiction and venue are proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

## Administrative Procedure and Procedural Posture

10.      On or about May 31, 2018, Plaintiff timely filed a Charge of Discrimination against with the Equal Employment Opportunity Commission ("EEOC") on the basis of Plaintiff's disability and/or Defendants' perception that Plaintiff is disabled, on the basis of Plaintiff's sex and on the basis of retaliation (attached as Exhibit A and incorporated herein by reference).

11.      On or about November 15, 2018, the EEOC issued to Plaintiff Notice of Right to Sue (attached as Exhibit B and incorporated herein by reference).

12.      The aforesaid Charge of Discrimination provided the EEOC with sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an investigation of Plaintiff's claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

**13.** Through the filing of Plaintiff's Charge of Discrimination, Defendants were afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

**14.** Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

<u>**General Allegations Common to All Counts**</u>

**15.** Plaintiff was an employee of Defendants approximately August 2015 until on or about February 19, 2018, when her employment was terminated.

**16.** Plaintiff worked for Defendants through their facility located at 123 West 8th Street, Suite 303, Lawrence, Douglas County, Kansas 66044.

**17.** At all times pertinent to this Complaint, Plaintiff was the only female senior account executive who worked for Defendants.

**18.** During Plaintiff's employment, Defendants had a "rookie" training program for new hires.

**19.** Plaintiff was never sent to participate in the "rookie" training program.

**20.** Upon information and belief, other similarly situated male employees of Defendants were sent to participate in the "rookie" training program.

**21.** Upon information and belief, prior to and throughout Plaintiff's employment with Defendants, Defendants failed to provide adequate training to their employees and supervisors in order to prevent and prohibit retaliation and discrimination

**22.** Upon information and belief, prior to and throughout Plaintiff's employment with Defendants, Defendants failed to provide adequate training to their employees and

supervisors regarding the ADA, Title VII, sexual harassment, disability discrimination, discrimination in the workplace, or retaliation guidelines.

23.　　In approximately the summer of 2017, Plaintiff began to suffer and continues to suffer from certain medical conditions.

24.　　Plaintiff's medical condition, at all times pertinent to this Complaint, did and continues to affect her major life activities, including self-care, sleeping, learning, reading, concentrating, thinking, communicating, and working.

25.　　Plaintiff was employed by Defendants as a "Senior Account Executive."

26.　　At all times pertinent to this Complaint, Mark Tuttle ("Tuttle"), Plaintiff's supervisor, treated her differently and less favorably because of her gender.

27.　　During her employment, Plaintiff was expected to be out of the office and in front of clients and potential customers at certain times in order to fulfill her job duties.

28.　　Despite Plaintiff's job duties, Mr. Tuttle would question Plaintiff constantly about her whereabouts.

29.　　Upon information and belief, Mr. Tuttle would not question Plaintiff's male coworkers on their whereabouts.

30.　　Mr. Tuttle did not allow Plaintiff to present detailed service or product information to clients.

31.　　Mr. Tuttle constantly questioned Plaintiff's abilities to present detailed information.

32.　　Mr. Tuttle made it clear that Plaintiff was to bring prospective clients back to the office so that he could personally present the details.

33.     Upon information and belief, Plaintiff's male coworkers were allowed to present details to clients themselves.

34.     On one occasion, Plaintiff brought a potentially large account that required Mr. Tuttle to call representatives from the University of Kansas, as opposed to Plaintiff.

35.     Upon information and belief, Plaintiff's male coworkers were allowed to make calls to potentially large clients.

36.     Mr. Tuttle refused to call the University of Kansas personnel for months and forced Plaintiff to lose the sale.

37.     At all times pertinent to this Complaint, Mr. Tuttle did not train Plaintiff or take the time to provide basic information to her on certain meetings with clients.

38.     Upon information and belief, Mr. Tuttle did train Plaintiff's male coworkers and provided them with the information they needed for clients.

39.     During the final twelve (12) months of Plaintiff's employment, Mr. Tuttle did not referr sales opportunities to her, but instead provided sales opportunities to Plaintiff's male coworkers.

40.     At all times pertinent to this Complaint, Plaintiff was excluded from conversations between Mr. Tuttle and Plaintiff's male coworkers, including conversations about sports and home repair.

41.     Plaintiff would try to participate in the conversations between Mr. Tuttle and her male coworkers, but she was ignored.

42.     Plaintiff was then criticized for not participating in said conversations.

43.     Plaintiff was excluded from conversations between Mr. Tuttle and Plaintiff's male coworkers because of her sex.

44.     Once per year, Mr. Tuttle would put Plaintiff in charge of coordinating a volunteer walk, which required her to take time away from her sales goals.

45.     When assigning the "volunteer" assignment to Plaintiff, Mr. Tuttle said, "I am not assigning this to you because you are a woman; I am assigning this to you because you live in Lawrence."

46.     One of Plaintiff's male coworkers also lived in Lawrence, Kansas and was not assigned to coordinate the volunteer walk.

47.     In the spring of 2016, Mr. Tuttle informed Plaintiff that he was putting her on a PIP for the first time and claimed that she was underperforming.

48.     Plaintiff had not been on the job long enough to warrant placement on PIP for poor performance.

49.     Plaintiff successfully performed all necessary goals and expectations required for her first PIP.

50.     Plaintiff experienced sexual harassment by an employee of a client of Defendants.

51.     The employee of the client would consistently put his hands on Plaintiff, touching Plaintiff's arms, legs, and thigh areas over half a dozen times.

52.     On or about November 16, 2016, after Plaintiff attended a basketball game with the employee of the client as part of her job duties, the employee of the client pressed himself against Plaintiff and attempted to kiss her, saying "give me a kiss" while they rode in an elevator.

53.     Plaintiff put her hands into fists, crossed her arms, pushed the employee of the client away, and turned her head in an attempt to dissuade his unwanted sexual behavior.

54.     Despite Plaintiff's strong resistance, the employee of the client continued to pursue her in the elevator and tried to kiss the right side of her neck.

55.     Plaintiff said "no" to the sexual advance, left the situation immediately, and attended the work event scheduled for that evening in a different part of the building.

56.     On or about November 18, 2016, Plaintiff complained of the sexual harassment she had experienced to Mr. Tuttle, who apologized and said he would contact Defendants' Human Resources Department ("HR") about the issue.

57.     Defendants' HR informed Plaintiff that they would have a conversation with the client because Defendants "were not in charge" of the employee of the client.

58.     Defendants' HR informed Plaintiff they were not required to report back any disciplinary action that may take place against the employee of the client.

59.     After Plaintiff reported the client's sexual harassment to Mr. Tuttle, he became more distant and less communicative with Plaintiff.

60.     Plaintiff began experiencing worsening symptoms of her medical condition, suffering from sensory deprivation, loss of appetite, and fatigue.

61.     In September 2017, Plaintiff informed Mr. Tuttle of her medical condition and that it was getting worse. Plaintiff noted that she was changing her therapy, seeing a specialist, and was working very hard to maintain normalcy in her life.

62.     Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

63.     Plaintiff hit 90% of her sales target, similar to three (3) of her male coworkers.

64.     During this time, Mr. Tuttle became frustrated with Plaintiff's medical absences.

65.      In December 2017, while the office was closed for the holiday season, Mr. Tuttle required Plaintiff to come in and informed Plaintiff that he was placing her on a PIP in January 2018 for a second time.

66.      After Plaintiff was put on the PIP, she was excluded from a company dinner with Defendants' corporate executives.

67.      Upon information and belief, Plaintiff's male coworkers were invited to the company dinner.

68.      Plaintiff successfully performed the rigorous metrics set forth in the second PIP, including landing a $48,000 deal that no one else in the company was able to get.

69.      Upon information and belief, none of Plaintiff's male coworkers were put on a PIP although they had similar or worse sales performance records than Plaintiff.

70.      On February 19, 2018, Mr. Tuttle informed Plaintiff that her employment was being terminated, which was to be effective on February 23, 2018.

71.      Despite Plaintiff's PIP performance, Mr. Tuttle stated that he wanted to make a change because he thought Plaintiff was "just doing enough to get by."

72.      Upon information and belief, Defendants replaced Plaintiff with a male employee.

## COUNT I - DISPARATE TREATMENT AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

73.      Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

74.      Plaintiff is disabled, as defined by the ADA, at all relevant times herein and/or Defendants regarded Plaintiff as being disabled.

75.      Specifically, Plaintiff suffers medical condition(s) affecting her energy and activity levels, mental health, and overall physical well-being which substantially limit her

major life activities, including self-care, sleeping, eating, concentrating, thinking, communicating, working, and various functions of the immune system.

76.      At all relevant times, including prior to Plaintiff's termination, Defendants were aware that Plaintiff had an impairment and a record of having such impairment.

77.      Plaintiff is a qualified individual as defined by the ADA, due to her disability and/or Defendants' perception that Plaintiff is disabled.

78.      Plaintiff could perform the essential functions of her job duties with Defendants with or without reasonable accommodation.

79.      Defendants unlawfully and intentionally discriminated against Plaintiff based on her disability and/or because they regarded her as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying her legal rights when they terminated Plaintiff's employment.

80.      Specifically, Defendants' conduct in violation of the ADA included:

   a.   refusing to engage in any interactive process by which to discuss reasonable accommodation of Plaintiff;

   b.   putting Plaintiff on a PIPs due to her disability; and

   c.   terminating Plaintiff.

81.      Plaintiff's disability and/or Defendants' perception that Plaintiff is disabled, was a motivating factor in Defendants' decision to terminate Plaintiff's employment.

82.      As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

**83.**      As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, a damaged career record, and mental anguish and pain, and related compensatory damages.

**84.**      By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

**85.**      As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants jointly and severally for actual and economic damage to make Plaintiff whole by providing appropriate back pay and benefits in amounts provided at trial, and for other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices; for injunctive relief including ordering Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities and eradicate the effects of its past and present unlawful employment practices; for reinstatement or front pay in lieu of reinstatement; for past and future compensatory damages and pecuniary and non-pecuniary losses including emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, resulting from the unlawful employment practices described herein in amounts to be determined at trial; for punitive damages for Defendants' malicious conduct or reckless indifference described herein in amounts to be determined at trial; for reasonable attorney's fees and costs incurred herein as determined by the

Court; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

<u>**COUNT II –SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**</u>

**86.**　　　　　Plaintiff incorporates the allegations contained in above paragraphs as though fully set forth herein.

**87.**　　　　　During Plaintiff's employment with Defendants, Plaintiff was subjected to a hostile and offensive work environment based on her sex, female, which constituted a continuing pattern of unwelcome harassment, which she found and which a reasonable person would find to be offensive, which was severe and pervasive, and which altered the terms, conditions and/or privileges of her employment.

**88.**　　　　　During Plaintiff's employment with Defendants, Plaintiff experienced repeated use of sexually harassing language and behavior which was intentional and intended to negatively impact Plaintiff, a female employee.

**89.**　　　　　The comments and actions Plaintiff was subjected to were unwelcome, highly offensive, egregious, humiliating, and intimidating.

**90.**　　　　　Defendants failed to take prompt, effective remedial action to end the harassment.

**91.**　　　　　All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

**92.**　　　　　As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, lost past and future wages and benefits, career damage and diminished career

potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses.

93.          The conduct of Defendants was intentional, malicious, and/or outrageous and evidenced an evil motive or reckless disregard for the rights of Plaintiff and other similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants jointly and severally for actual and economic damage to make Plaintiff whole by providing appropriate back pay and benefits in amounts provided at trial, and for other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices; for injunctive relief including ordering Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities and eradicate the effects of its past and present unlawful employment practices; for reinstatement or front pay in lieu of reinstatement; for past and future compensatory damages and pecuniary and non-pecuniary losses including emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, resulting from the unlawful employment practices described herein in amounts to be determined at trial; for punitive damages for Defendants' malicious conduct or reckless indifference described herein in amounts to be determined at trial; for reasonable attorney's fees and costs incurred herein as determined by the Court; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT III – DISPARATE TREATMENT BASED ON SEX IN VIOLATION OF TITLE VII

94.     Plaintiff incorporates the allegations contained in above-paragraphs as if fully set forth herein.

95.     During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment and an ongoing practice and/or pattern of discrimination/disparate treatment based on her sex, female, by Defendants, including by and through her supervisors.

96.     Plaintiff was subjected to different work requirements than other similarly situated male employees.

97.     Plaintiff's sex, female, was a motivating factor in Defendants' decision to terminate Plaintiff's employment.

98.     All actions or inactions of or by Defendants occurred by or through their owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

99.     As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses.

100.    The conduct of Defendants was outrageous and evidence an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants jointly and severally for actual and economic damage to make Plaintiff whole by providing appropriate back pay and benefits in amounts provided at trial, and for other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment

practices; for injunctive relief including ordering Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities and eradicate the effects of its past and present unlawful employment practices; for reinstatement or front pay in lieu of reinstatement; for past and future compensatory damages and pecuniary and non-pecuniary losses including emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, resulting from the unlawful employment practices described herein in amounts to be determined at trial; for punitive damages for Defendants' malicious conduct or reckless indifference described herein in amounts to be determined at trial; for reasonable attorney's fees and costs incurred herein as determined by the Court; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV - RETALIATION IN VIOLATION OF THE ADA

**101.**     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

**102.**     Plaintiff is disabled and/or Defendants regarded her as disabled, as defined by the ADA, at all relevant times herein.

**103.**     Plaintiff is a member of a protected class because of her disability and/or because she was regarded as being disabled, because she reported her disability, and she sought accommodation.

**104.**     In retaliation for Plaintiff's complaints and/or request for accommodation, Plaintiff was given a PIP by Defendants and then was terminated.

**105.**     As a direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has been deprived of income, including wages and benefit as well as other monetary and non-monetary benefits.

**106.**     As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, diminished career potential, emotional distress and mental anguish and pain, and related compensatory damages.

**107.**     By failing to take prompt and effective remedial action Defendants, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

**108.**     As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants jointly and severally for actual and economic damage to make Plaintiff whole by providing appropriate back pay and benefits in amounts provided at trial, and for other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices; for injunctive relief including ordering Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities and eradicate the effects of its past and present unlawful employment practices; for reinstatement or front pay in lieu of reinstatement; for past and future compensatory damages and pecuniary and non-pecuniary losses including emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, resulting from the unlawful employment

practices described herein in amounts to be determined at trial; for punitive damages for Defendants' malicious conduct or reckless indifference described herein in amounts to be determined at trial; for reasonable attorney's fees and costs incurred herein as determined by the Court; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT V - RETALIATION IN VIOLATION OF TITLE VII

**109.**     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

**110.**     Plaintiff is a member of a protected class because of her sex.

**111.**     Plaintiff engaged in protected activity under Title VII by informing Tuttle of sexual advances made her uncomfortable and she wished for them to cease.

**112.**     Defendants took adverse actions against Plaintiff as a result of her engaging in the aforementioned protected activity.

**113.**     For example, Tuttle began to treat Plaintiff differently after she informed him that the harassing conduct made her uncomfortable by communicating less with her and placing her in an aggressive PIP.

**114.**     Defendants further committed an adverse action when they terminated her employment.

**115.**     Defendants' actions constitute unlawful employment discrimination against Plaintiff is violation of Title VII.

**116.**     As a direct and proximate result of the Defendants' actions and/or omissions, Plaintiff has been deprived of income, including wages, diminished career potential, and benefit as well as other monetary and non-monetary benefits.

**117.** As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

**118.** By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

**119.** As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants jointly and severally for actual and economic damage to make Plaintiff whole by providing appropriate back pay and benefits in amounts provided at trial, and for other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices; for injunctive relief including ordering Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities and eradicate the effects of its past and present unlawful employment practices; for reinstatement or front pay in lieu of reinstatement; for past and future compensatory damages and pecuniary and non-pecuniary losses including emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, resulting from the unlawful employment practices described herein in amounts to be determined at trial; for punitive damages for Defendants' malicious conduct or reckless indifference described herein in amounts to be determined at trial; for reasonable attorney's fees and costs incurred herein as determined by the

Court; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

BROUS LAW LLC

By: /s/Carrie M. Brous
Carrie M. Brous        KS #18157
cbrous@brouslaw.com
3965 West 83rd Street, #115
Prairie Village, KS 66208
(913) 209-8596


EDELMAN, LIESEN & MYERS, L.L.P.

Katherine E. Myers      KS #25833
kmyers@elmlawkc.com
4051 Broadway, Ste 4
Kansas City, Missouri 64111
Telephone: (816) 533-4976
Facsimile:  (816) 463-8449


**ATTORNEYS FOR PLAINTIFF**